UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF NORTH DAKOTA, <br><br> Petitioner, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR; SALLY JEWELL, in her official capacity as Secretary of the Interior; OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT; and JOSEPH PIZARCHIK, in his official capacity as Director of the Office of Surface Mining Reclamation and Enforcement, <br><br> Respondents. | Case No. _____ |

**COMPLAINT AND PETITION FOR REVIEW**

The State of North Dakota alleges the following:

1. This is a civil action for declaratory and injunctive relief brought against the U.S. Department of the Interior ("DOI") Office of Surface Mining and Reclamation Enforcement ("OSM") under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, and under Section 526 of the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1276.

2. This case involves a challenge to a final rule promulgated by OSM under SMCRA, 30 U.S.C. §§ 1231 *et seq*. The rule, entitled "Stream Protection Rule," 81 Fed. Reg. 93,066 (Dec. 20, 2016) ("Final Rule"), infringes on North Dakota's regulatory primacy under SMCRA and unlawfully expands the federal government's authority over surface coal mining and reclamation operations beyond the limits established under SMCRA, other federal laws

including the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, and the U.S. Constitution. North Dakota therefore seeks declaratory and injunctive relief against OSM for violations of the APA, SMCRA, the CWA, and the U.S. Constitution.

## JURISDICTION AND VENUE

3. The State of North Dakota brings this action pursuant to 30 U.S.C. § 1276(a)(1), because it involves an "action by the Secretary promulgating [a] national rule[] or regulation[] including standards pursuant to sections 1251, 1265, 1266, and 1273 of [SMCRA]." This Court shall affirm such action, unless it "concludes that such action is arbitrary, capricious, or otherwise inconsistent with law." 30 U.S.C. § 1276(a)(1).

4. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States and under the APA, 5 U.S.C. § 702, providing for judicial review of a final agency action. This Court has the authority to grant the declaratory and injunctive relief sought herein under 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), and under 5 U.S.C. §§ 701–706 for violations of the APA.

5. Venue is proper in the United States District Court for the District of Columbia. 30 U.S.C. § 1276(a)(1).

## PARTIES

6. Petitioner State of North Dakota is a sovereign entity with authority to regulate surface coal mining and reclamation operations in its borders, *see* 45 Fed. Reg. 82,246 (codified at 30 C.F.R. Part 934). As expressly contemplated by SMCRA, North Dakota has exercised primacy over surface coal mining and reclamation operations through duly enacted state laws administered by the North Dakota Public Service Commission ("PSC"). *See Dakota Res. Council v. N.D. Pub. Serv. Comm'n*, Case No. 1:12-CV-064 at *4 (D.N.D. May 30, 2012)

("Since the Secretary[ of the Interior]'s approval of the ND Program in 1980, the PSC has maintained *exclusive* authority over surface coal mining and reclamation on its non-federal and non-tribal lands.") (emphasis added).  As a sovereign entity, North Dakota also regulates land use, water quality, and water resources within its borders through duly enacted state laws.

7. Respondent DOI is an agency of the United States within the meaning of the APA.  *See* 5 U.S.C. § 551(1).  DOI is charged with, among other things, regulating public lands.

8. Respondent Sally Jewell is Secretary of the Interior and a signatory of the Final Rule.

9. Respondent OSM is an agency within the meaning of the APA.  *See* 5 U.S.C. § 551(1).  OSM is a branch of the DOI that is charged with implementation and enforcement of SMCRA on behalf of the federal government.

10. Respondent Joseph Pizarchik is Director of OSM and a signatory of the Final Rule.

## STATUTORY BACKGROUND

11. In enacting SMCRA, Congress declared it "essential to the national interest to insure the existence of an expanding and economically healthy underground coal mining industry," and also provided that "the primary governmental responsibility for developing, authorizing, issuing, and enforcing regulations for surface mining and reclamations operations . . . should rest with the States." 30 U.S.C. § 1201.

12. Enacted in 1977, SMCRA struck "a balance between protection of the environment and agricultural productivity and the Nation's need for coal as an essential source of energy." 30 U.S.C. § 1202(f).  To achieve this objective, SMCRA established "a program of cooperative federalism that allows the States, within limits established by federal minimum

standards, to enact and administer their own regulatory programs, structured to meet their own particular needs." *Hodel v. Va. Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 289 (1981).

13. The need for this cooperative federalism-based approach to surface mining regulation rests on a Congressional determination that recognizes the geographic "diversity in terrain, climate, biologic, chemical, and other physical conditions in areas subject to mining operations." 30 U.S.C. § 1201(f).

14. SMCRA directed the Secretary of the Interior to implement a federal regulatory program setting minimum standards for surface coal mining operations within six months of August 3, 1977. *See* 30 U.S.C. 1252(e). That program remained in place until the States either (i) proposed and received approval for their own individual programs; or (ii) permanent federal programs were enacted in States that did not adopt their own programs. *Id.*

15. States that have gained approval for their own regulatory programs exercise exclusive jurisdiction over surface coal mining operations, while the Secretary exercises exclusive jurisdiction in States with federal plans. *See* 30 U.S.C. §§ 1253(a), 1254(a).

16. The Secretary promulgated an initial regulatory program on December 17, 1977. *See* 42 Fed. Reg. 62,639.

17. North Dakota received approval to administer its own program on December 15, 1980*, see* 45 Fed. Reg. 82,246 (codified at 30 C.F.R. Part 934), meaning North Dakota enjoys exclusive jurisdiction over surface coal mining operations in the State.

18. North Dakota has exercised primacy in administering its SMCRA-approved regulatory program through the North Dakota PSC. The PSC's authority and discretion has been recognized and upheld by the U.S. District Court for the District of North Dakota. *See Dakota Res. Council*, Case No. 1:12-CV-064 at *4 ("Since the Secretary's approval of the ND Program

4

in 1980, the PSC has maintained exclusive authority over surface coal mining and reclamation on its non-federal and non-tribal lands.")

19. North Dakota invested in the right to have exclusive jurisdiction under SMCRA, and it maintains exclusive authority except in certain limited situations, such as if the State fails to enforce its program. *See* 30 U.S.C. § 1271. As such, SMCRA was designed to "provid[e] a truly federalist distribution of regulatory authority for the coal mining industry." *See Nat'l Mining Ass'n v. U.S. Dept. of Interior*, 251 F.3d 1007, 1012 (D.C. Cir. 2001).

20. SMCRA is unique among federal environmental laws in that it defers to State law entirely, so long as it meets the specified minimum requirements. Indeed, SMCRA declares that no State law or regulation shall be superseded by "any provision of this chapter or any regulation issued pursuant thereto" unless the State law or regulation "is inconsistent with the provisions of this chapter." 30 U.S.C. § 1255(a). This "grant of primacy to a state [with an approved program] wholly but conditionally divest[s] the federal government of *direct* regulatory authority." *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 317 (3d Cir. 2002) (quotation marks and citation omitted). Stated differently, OSM is supposed to "step[] back and let[] an approved [state] program run," as the agency as largely done for decades now. *Id.*

21. Moreover, the comprehensive scope of SMCRA does not provide OSM with the authority to regulate issues within the scope of other federal laws. Rather, Section 702 of SMCRA clarifies the law's subservience to other laws enacted to govern areas otherwise impacted by mining operations. 30 U.S.C. § 1292. This deference extends to other laws, such as the CWA, the Clean Air Act ("CAA"), 42 U.S.C §§ 7401 *et seq.*, the Endangered Species Act

("ESA"), 16 U.S.C. §§ 1531 *et seq.*, and the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.*

## BACKGROUND OF THE FINAL RULE

22. On July 27, 2015, OSM published in the Federal Register a proposed rule entitled "Stream Protection Rule." 80 Fed. Reg. 44,436 ("Proposed Rule").

23. OSM published the Final Rule in the Federal Register on December 20, 2016. *See* Stream Protection Rule, 81 Fed. Reg. 93,066.

### I. The Final Rule re-defines "material damage to the hydrologic balance outside the permit area."

24. The Final Rule redefines myriad terms, including the statutory term "material damage to the hydrologic balance outside the permit area," in a way that fails to reflect local conditions or maintain the current flexibility that States possess in evaluating impacts or potential impacts from mining on a site-specific basis.

25. To issue a permit under SMCRA and concomitant regulations, North Dakota must determine that the mining operation "has been designed to prevent material damage to the hydrologic balance outside the permit area." 30 U.S.C. § 1260(b)(3); 30 C.F.R. § 773.15(e).

26. Prior to the Final Rule, neither SMCRA nor existing regulations defined that term, but rather deferred to the judgment of North Dakota as the exclusive regulatory authority.

27. The Final Rule redefines "material damage to the hydrologic balance outside the permit area" to mean "an adverse impact . . . resulting from surface coal mining and reclamation operations, underground mining activities, or subsidence associated with underground mining activities, on the quality or quantity of surface water or groundwater, or on the biological condition of a perennial or intermittent stream." 30 C.F.R. § 701.5. Under the Final Rule, this determination—made by the federal government—"will be based on consideration of the

baseline data collected under § 780.19 or § 784.19 of this chapter and the following reasonably anticipated or actual effects of the operation: (1) For a surface water located outside the permit area, effects that cause or contribute to a violation of applicable state or tribal water quality standards, including, but not limited to, state or tribal water quality standards established under section 303(c) of the Clean Water Act, 33 U.S.C. 1313(c), or, for a surface water for which water quality standards have not been established, effects that cause or contribute to nonattainment of any premining use of that surface water outside the permit area; (2) Effects that cause or contribute to a violation of applicable state or tribal water quality standards for groundwater located outside the permit area, or effects that preclude a premining use of groundwater located outside the permit area; or (3) Effects that result in a violation of the Endangered Species Act of 1973, 16 U.S.C. 1531 *et seq*." *Id.*

## II. The Final Rule requires North Dakota to provide fish and wildlife resource information to the federal government.

28. The Final Rule includes a number of restrictions related to wildlife species and habitat which are inconsistent with SMCRA and existing federal and state fish and wildlife programs. Specifically, the Final Rule greatly expands the required analysis for threatened and endangered fish and wildlife protection and enhancement plans under SMCRA, but now expands that exercise to include species that haven't even been listed yet, and have only been proposed for listing. With the rate at which serial litigation is resulting in species listing proposals, the footprint of these requirements will cover the United States and be brought to bear on nearly every mining operation nationwide, exceeding that which is called for under the ESA and with no identifiable species conservation and recovery benefits.

29. The Final Rule vests the U.S. Fish and Wildlife Service ("FWS") with final authority over the issuance of SMCRA permits through a *de facto* veto authority given to FWS

7

for any protection and enhancement plan the FWS deems unsatisfactory. *See* 30 C.F.R. § 780.16(b)(2)–(3). It also cedes OSM and state regulatory authorities' primary responsibility under SMCRA—the permitting of mine sites—to an agency not authorized or equipped to make those decisions. And, it would deny due process to applicants simply because the FWS need not take any action at all to exercise its veto authority. *Id.*

30. This requirement subordinates North Dakota's permitting authority to federal control because it *requires* the State to defer to FWS's assessment of information the State must provide FWS regarding "species listed as threatened or endangered under the Endangered Species Act . . . , designated or proposed critical habitat under that law, or species proposed for listing as threatened or endangered under that law." 30 C.F.R. § 780.16(e).

## CLAIMS FOR RELIEF

**Claim One:**   **The Final Rule Violates North Dakota's State Sovereignty Under the Tenth Amendment**

31. Paragraphs 1–30 are re-alleged and incorporated by reference.

32. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution . . . are reserved to the States respectively, or to the people. U.S. CONST. amend. X.

33. The Final Rule encroaches upon the exclusive authority of North Dakota to regulate surface mining and reclamation activities within its borders. *See* 30 C.F.R. Part 934; *see also Hess*, 297 F.3d at 317–18 ("[e]xclusive . . . means just that—'exclusive.' It does not mean 'parallel' or 'concurrent.'") Moreover, land-use planning, regulation, and zoning are not enumerated powers granted to the federal government—they are the basic, fundamental functions of State and local governmental entities. Authority over these functions is reserved, traditionally, to the states under the Tenth Amendment. *See Solid Waste Agency of N. Cook*

*County v. U.S. Army Corps of Engineers*, 531 U.S. 159, 174 (2001) (recognizing the "States' traditional and primary power over land and water use"); *see also FERC v. Mississippi*, 456 U.S. 742, 768, n.30 (1982) ("regulation of land use is perhaps the quintessential state activity").

34. The courts traditionally expect "a 'clear and manifest' statement from Congress to authorize an unprecedented intrusion into traditional state authority." *Rapanos v. United States*, 547 U.S. 715, 738 (2006) (citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994)); *see also Bond v. United States*, 134 S.Ct 2077, 2089 (2014) ("when legislation 'affect[s] the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision.'") (quoting *United States v. Bass,* 404 U.S. 336, 349 (1971)). In SMCRA, Congress did the opposite, declaring that "because of the diversity in terrain, climate, biologic, chemical, and other physical conditions in areas subject to mining operations, the primacy of governmental responsibility for developing, authorizing, and enforcing regulations for surface mining and reclamation operations . . . should rest with the *States*." 30 U.S.C. § 1201(f) (emphasis added). Thus, "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

35. Accordingly, the Final Rule violates the Tenth Amendment and is invalid.

**Claim Two:** **The Final Rule Violates SMCRA.**

36. Paragraphs 1–35 are re-alleged and incorporated by reference.

37. SMCRA provides States that have gained approval for their own regulatory programs exercise exclusive jurisdiction over surface coal mining operations. *See* 30 U.S.C. §§

9

1253(a), 1254(a).  North Dakota has received approval to administer its own program, and therefore has exclusive jurisdiction over surface coal mining operations in the State.

38.     SMCRA also provides that nothing in the statute or regulations promulgated thereunder shall supersede a State law or regulation that is not inconsistent with SMCRA or its regulations.

39.     The Final Rule broadly prohibits nearly all mining-related activity in or within 100 feet of any "perennial" or "intermittent stream."

40.     The Final Rule also defines SMCRA's statutory term "material damages to the hydrologic balance outside the permit area" in a way that subordinates North Dakota's authority over mine permitting to requirements of the CWA and the ESA.

41.     The Final Rule is invalid because it imposes restrictions on mining-related activity that purport to supersede exclusive and primary jurisdiction that North Dakota exercises in accordance with SMCRA.

**Claim Three: The Final Rule Violates the Clean Water Act.**

42.     Paragraphs 1–41 are re-alleged and incorporated by reference.

43.     The Supreme Court has consistently affirmed that the CWA is a "comprehensive program for controlling and abating water pollution" within defined federal jurisdiction. *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 319 (1981) (citing *Train v. City of New York*, 420 U.S. 35, 37 (1975)); *see also Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987).

44.     The CWA establishes that it is the "policy of Congress to recognize, preserve, and protect the primary responsibilities and rights of *the States* to prevent, reduce, and eliminate pollution, [and] to plan the development and use (including restoration, preservation, and

enhancement) of land and water resources . . . ." *Rapanos*, 547 U.S. at 737 (quoting 33 U.S.C. § 1251(b)).

45. SMCRA explicitly acknowledges that the CWA was intended to be, and is, the controlling *federal* legislation governing water pollution and water quality standards of those limited waters that fall under federal authority, *see* 30 U.S.C. § 1292(a) ("Nothing in this Act shall be construed as superseding, amending, modifying, or repealing the [CWA], the State laws enacted pursuant thereto, or other Federal laws relating to the preservation of water quality.") (citations omitted).

46. Despite this acknowledgment, the Final Rule proceeds to, among other things, (i) unlawfully establish federal jurisdiction, such as by redefining "perennial stream," in an overreaching manner, *see* 30 C.F.R. § 701.5; (ii) unlawfully establish water quality standards that are redundant to the CWA and that will subject permit-holders to the possibility of direct CWA enforcement under SMCRA, *see id.* § 816.42(d); and (iii) illegally condition SMCRA permits on obtaining CWA permits, *see id.* § 816.56(a)(1).

47. The Final Rule is invalid because it violates the CWA.

**Claim Four: The Final Rule Violates the APA.**

48. Paragraphs 1–47 are re-alleged and incorporated by reference.

49. Under the APA, a final agency action shall be held unlawful and set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . .; in excess of statutory jurisdiction, authority or limitations . . .; or without observance of procedure required by law." 5 U.S.C. § 706(2).

50. The Final Rule is arbitrary, capricious, an abuse of discretion, and otherwise unlawful. Therefore, it violates the APA, 5 U.S.C. § 706(2).

**PRAYER FOR RELIEF**

WHEREFORE, the State of North Dakota requests the Court to enter judgment in its favor and issue an order:

A.  Declaring that the Final Rule is unlawful because (1) it was issued in violation of Surface Mining Control and Reclamation Act, the Clean Water Act, and the Administrative Procedure Act; and (2) it interferes with state sovereignty in violation of the Tenth Amendment;

B.  Vacating and setting aside the Final Rule in its entirety;

C.  Issuing injunctive relief prohibiting the Agencies from using, applying, implementing, enforcing, or otherwise proceeding on the basis of the Final Rule;

D.  Awarding the States costs and attorneys' fees; and

E.  Granting the States such additional relief as may be necessary and appropriate or as the Court deems just and proper.

Dated: December 20, 2016            Respectfully submitted,

Wayne Stenehjem
Attorney General
North Dakota Office of the Attorney General
500 N. 9th Street
Bismarck, ND 58501
Phone: (701) 328-2925
ndag@nd.gov

/s/ Paul M. Seby
Paul M. Seby
Special Assistant Attorney General
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, CO  80202
Phone: (303) 572-6584
sebyp@gtlaw.com

*Counsel for Petitioner State of North Dakota*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Complaint and Petition for Review with the U.S. District Court for the District of Columbia on December 20, 2016, via the Court's CM/ECF system, and I will cause a true copy of the foregoing to be served via U.S. mail on the 20th day of December, 2016, upon the following:

Hon. Sally Jewell
Secretary of the Interior
U.S. Department of the Interior
1849 C Street, NW
Washington, DC  20240

Hon. Joseph Pizarchik
Director
Office of Office of Surface Mining Reclamation and Enforcement
1951 Constitution Avenue, NW
Washington, DC  20240

Hon. Loretta E. Lynch
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001

/s/ Paul M. Seby
Paul M. Seby
Special Assistant Attorney General
State of North Dakota
***Counsel for Petitioner State of North Dakota***